# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 15-CV-23609-FAM

---

### BANK OF AMERICA, N.A.,

### Appellant,

### vs.

### GENNY MARINO RODRIGUEZ,

### Appellee

---

### Appeal from the United States Bankruptcy Court for the
### Southern District of Florida, Miami Division
### Case No. 12-12043-BKC-AJC

---

### INITIAL BRIEF OF APPELLEE, GENNY MARINO RODRIGUEZ

---

James C. Moon, Esq.
Florida Bar No.: 938211
jmoon@melandrussin.com
Joseph M.Wasserkrug, Esq.
Florida Bar No.: 112274
joseph@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
Tel: (305) 358-6363
Fax: (305) 358-1221

*Counsel for Appellee,*
*Genny Marino Rodriguez*

1

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

STATEMENT OF APPELLATE JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW ........................................ 1

STATEMENT OF THE CASE............................................................................................ 3

SUMMARY OF THE ARGUMENT ................................................................................... 6

ARGUMENT ...................................................................................................................... 9

   I.   THE BANKRUPTCY COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT DENIED THE REQUEST TO REOPEN THE BANKRUPTCY CASE................................... 9

     A.   THE FACTORS A BANKRUPTCY COURT CONSIDERS WHEN DECIDING WHETHER TO REOPEN A BANKRUPTCY CASE ........................................................ 9

     B.   THE DOCTRINE OF LACHES BARS APPELLANT FROM REOPENING THE BANRUPTCY CASE. ........................................................................................ 13

   II.   CAUSE DOES NOT EXIST TO COMPEL DEBTOR TO CEASE DEFENDING THE FORECLOSURE ACTION AND SURRENDER THE PROPERTY ................................... 15

CONCLUSION.................................................................................................................. 26

CERTIFICATE OF SERVICE ........................................................................................ 28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acquisition Corp. of Am. v. Fed. Sav. & Loan Ins. Corp.*, 96 B.R. 380, 382 (S.D. Fla.1988) ....... 2

*Cadlerock Joint Venture L.P v. Herendeen*, 531 B.R. 869, 872 (M.D. Fla. 2015) ........................ 2

*Dennis v. Poff (In re Poff),* No. 09-11634, 2009 WL 2776468 at *2 (11th Cir. Sept. 2, 2009) ..... 2

*IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs.*), 408 F.3d 689, 698 (11th Cir.2005)............. 2

*In re Apex Oil. Co., Inc*., 406 F.3d 538, 542 (8th Cir. 2005) ....................................... 2, 10, 12, 14

*In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) ......................................................... 9, 13

*In re Bartlett*, Case No. 8:10-bk-23758-MGW, (Bankr. M.D. Fla. Jul. 28, 2015) ........... 23, 24, 26

*In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991) .......................................................................... 10

*In re Delfino*, 351 B.R. 786 (Bankr. S.D. Fla. 2006) .................................................................... 14

*In re Donnell*, 234 B.R. 567, 575 (Bankr. D.N.H. 1999) ............................................................. 21

*In re Edwards*, 901 F.2d 1383, 1386 (7th Cir. 1990) ................................................................... 22

*In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996) .................................................................. 3

*In re Failla*, 529 B.R. 786, 788 (Bankr. S.D. Fla. 2014) .............................................................. 25

*In re Harris*, 226 B.R. 924 (Bankr. S.D.Fla. 1998) ..................................................................... 22

*In re Haskett*, 297 B.R. 637, 639 (Bankr. N.D. Ala. 2003) ........................................................... 2

*In re Jones*, 261 B.R. 479 (Bankr. N.D. Ala. 2001) ..................................................................... 25

*In re Kourogenis*, 539 B.R. 625 (Bankr. S.D. Fla. 2015) ................................................. 13, 16, 17

*In re Linderman*, 435 B.R. 715 (Bankr. M.D. Fla. 2009) ............................................................ 26

*In re Mayhugh*, 427 B.R. 549, 552 (Bankr. S.D. Fla. 2010) ......................................................... 2

*In re Mohammed*, 536 B.R. 351, 355 (Bankr. E.D.N.Y. 2015) ..................................................... 9

*In re Mohorne*, 404 B.R. 571, 576 (Bankr. S.D. Fla. 2009) ......................................................... 9

*In re Montalvo*, Case No 8:13-bk-0201-MGW, (Bankr. M.D. Fla., Mar. 12, 2015).................. 26

*In re Picciano*, Case No. 11-36787-PGH, (Bankr. S.D. Fla. May 22, 2015) ........................ 23, 24

*In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014)................................................. 16, 17

*In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990)........................................................ 3

*In re Taylor*, 3 F.3d 1512 (11th Cir. 1993) ............................................................... 22

*In re Theobald*, 218 B.R. 133, 136 (B.A.P. 10th Cir. 1998)........................................ 16

*In re Trussel*, Case No. 1:12-bk-10001-KSJ (Bankr. N.D. Fla. Mar. 5, 2015)............... 19, 20, 21

*In re Winburn,* 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996) ........................................ 9

*Latchman v. Wells Fargo Bank, N.A.*, No. 11-60282-CIV, 2011 WL 6936178 at *1 (S.D. Fla. Dec. 19, 2011)........................................................................................... 3

*Lykes Bros., Inc. v. United States Army Corps of Engr's*, 64 F.3d 630, 634 (11th Cir.1995) ........ 2

*Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) ...................... 8

*Mohorne v. Beal Bank, S.S.B.*, 419 B.R. 488, 493 (S.D. Fla. 2009).................................... 2, 3, 10

*Nordberg v. Arab Banking Corp.* (*In re Chase & Sanborn Corp.*), 904 F.2d 588, 593 (11th Cir. 1990) ........................................................................................ 3

*Olympia & York Fla. Equity Corp. v. Bank of New York* (*In re Holywell Corp.*), 913 F.2d 873, 879 (11th Cir.1990)...................................................................... 3

**Statutes**

11 U.S.C. § 101 ................................................................................................ 3

11 U.S.C. § 105 ................................................................................................ 15

11 U.S.C. § 350 ................................................................................................ 9

11 U.S.C. § 362 ................................................................................................ 16, 18, 19

11 U.S.C. § 521 .......................................................................................... passim

11. U.S.C. § 524 ........................................................................................................................ 4

28 U.S.C §§ 157 ...................................................................................................................... 1

28 U.S.C. § 1334 ..................................................................................................................... 1

28 U.S.C. § 158(a)(1) .............................................................................................................. 1

**Other Authorities**

727(b) of the Bankruptcy Code.............................................................................................. 3

## STATEMENT OF APPELLATE JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court has jurisdiction of the underlying core proceeding pursuant to 28 U.S.C §§ 157(a)(2)(B) and (O) and 28 U.S.C. § 1334.

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

Appellant Bank of America, N.A. ("*Appellant*") appeals the Bankruptcy Court's denial of its *Motion to Reopen Case to Compel Debtor to Surrender Real Property Located at 9980 Jamaica Drive, FL 33189* (the "*Motion*") [ECF No. 25].[1]  *Two* issues are raised by this appeal – the first completely ignored by Appellant in its brief:

1.     Whether the Bankruptcy Court abused its discretion by declining to reopen the Bankruptcy Case; and, assuming the Court answers this first issue in the affirmative,

2.     Whether the Bankruptcy Court erred by refusing to compel Appellee to cease defending the pending Foreclosure Action (defined herein) or "surrender" the property at issue based on Appellant and Appellee's failure to agree upon the terms and execution of a

---

[1]  The "ECF No." citations contained herein refer to the Bankruptcy Court proceedings underlying this appeal, *In re Genny Marino Rodriguez*, case number 12-12043-BKC-AJC (the "*Bankruptcy Case*") unless otherwise indicated.

1

reaffirmation agreement within the statutory timeframe prescribed by 11 U.S.C. § 521(a)(2)(B).

The bankruptcy court's ruling with respect to a motion to reopen a bankruptcy case is reviewed for abuse of discretion. *See Mohorne v. Beal Bank, S.S.B*., 419 B.R. 488, 493 (S.D. Fla. 2009) citing *Dennis v. Poff (In re Poff),* No. 09-11634, 2009 WL 2776468 at *2 (11th Cir. Sept. 2, 2009); *In re Mayhugh*, 427 B.R. 549, 552 (Bankr. S.D. Fla. 2010) ("[I]t is within the bankruptcy court's discretion to base its decision to reopen on the particular circumstances and equities of each particular case.") (*citing In re Apex Oil. Co., Inc*., 406 F.3d 538, 542 (8th Cir. 2005); *Cadlerock Joint Venture L.P v. Herendeen*, 531 B.R. 869, 872 (M.D. Fla. 2015) (citing *In re Haskett*, 297 B.R. 637, 639 (Bankr. N.D. Ala. 2003)).

The bankruptcy court's findings of fact will not be set aside unless shown to be clearly erroneous. *Mohorne v. Seal Bank, S.S.B*., 419 B.R. 488, 493 (S.D. Fla. 2009).

> The burden to show that a finding of fact is clearly erroneous lies with the appellant. *Acquisition Corp. of Am. v. Fed. Sav. & Loan Ins. Corp.*, 96 B.R. 380, 382 (S.D. Fla.1988). A finding of fact is only clearly erroneous when "'this court, after reviewing all the evidence, [is] left with the definite and firm conviction that a mistake has been committed.'" *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs.)*, 408 F.3d 689, 698 (11th Cir.2005) (*quoting Lykes Bros., Inc. v. United States Army Corps of Engr's*, 64 F.3d 630, 634 (11th Cir.1995)).

*Latchman v. Wells Fargo Bank, N.A.*, No. 11-60282-CIV, 2011 WL 6936178 at *1 (S.D. Fla. Dec. 19, 2011) (J. Moreno).

The bankruptcy court's conclusions of law are reviewed *de novo*. *Mohorne*, 419 B.R. at 493 (citing *In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996); *Olympia & York Fla. Equity Corp. v. Bank of New York* (*In re Holywell Corp.*), 913 F.2d 873, 879 (11th Cir.1990)). Further, mixed issues of law and fact and "ultimate facts" are all subject to *de novo* review. *Mohorne*, 419 B.R. at 493 (citing *Nordberg v. Arab Banking Corp.* (*In re Chase & Sanborn Corp.*), 904 F.2d 588, 593 (11th Cir. 1990); *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990)).

## STATEMENT OF THE CASE

On January 26, 2012, Genny Marino Rodriguez ("***Appellee***") filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (the "***Petition***").[2] ECF. No. 1. Schedule "D" of the Petition lists Appellant as a secured creditor with a lien on real property located at 9980 Jamaica Drive, Miami, FL 33189 (the "***Property***"). ECF No. 1 at p. 15. The Petition also includes the Chapter 7 Individual Debtor's Statement of Intention, where Appellee indicated her intent to retain the Property and reaffirm the debt. ECF No. 1 at p. 37.

On May 7, 2012, Appellee received a discharge under section 727(b) of the Bankruptcy Code (the "***Discharge Order***"). ECF No. 22. On May 10, 2012, a Final

---

[2] All references to the Bankruptcy Code herein refer to 11 U.S.C. § 101 *et seq*.

Decree and Discharge of Trustee was entered, and the Bankruptcy Case was closed. ECF No. 24. The record is devoid of any evidence that during the pendency of the Bankruptcy Case, Appellant ever presented a reaffirmation agreement to Appellee, nor did Appellant ever seek court intervention to compel the Appellee to execute a reaffirmation agreement or surrender the Property.

On September 23, 2013, one year and four months after the Bankruptcy Case was closed; Appellant filed a foreclosure action in state court (the "*Foreclosure Action*"). On June 15, 2015, three years and one month after the Bankruptcy Case was closed, Appellant filed the Motion.

On June 30, 2015, the Bankruptcy Court held a hearing on the Motion (the "*Hearing*"). At the Hearing, the Bankruptcy Court determined the following facts as undisputed, "the debtor, one, said they were going to reaffirm, two, they didn't and, three, they didn't say they were going to surrender." Tr. 19:2–5.[3] In the Motion and at the Hearing, without any support whatsoever, Appellant has alleged that Appellee "refused" to sign a reaffirmation agreement. However, Appellant failed to show that a reaffirmation agreement (which requires agreement between a lender and debtor)[4] was ever even presented to Appellee. ECF No. 25 at ¶ 12; Tr.

---

[3] All cites to "Tr." refer to the transcript of proceedings on June 30, 2015 in the Bankruptcy Case unless otherwise indicated.

[4] *See* 11. U.S.C. § 524 (c) and (k) reference to "agreement between holder of claim and debtor" and setting forth requirements for a valid reaffirmation agreement.

9:14–10:9. At the Hearing, Appellant asserted that loan modifications had been offered to Appellee, but no such assertion was made with regards to a reaffirmation agreement being presented to Appellee prior to her discharge or within the time prescribed in section 521(a)(2)(B). Tr. 10:1–9.

On August 13, 2015, the Bankruptcy Court entered its *Order Denying Secured Creditor Bank of America, N.A.'s Motion to Reopen Case to Compel Debtor to Surrender the Real Property Located at 9980 Jamaica Drive, FL 33189* (the "***Order***"). ECF No. 37. In its Order, the Bankruptcy Court properly applied the standard of review for determining whether cause exists to reopen a bankruptcy case, and found that none of the factors had been met, and further applied the doctrine of laches to bar Appellant's requested relief: "[Appellant] inexcusably delayed bringing the Motion (3 years after discharge), and the Debtor is unduly prejudiced by [Appellant's] delay. As a result, this case will not be reopened." ECF No. 37 at 6. Moreover, the Bankruptcy Court observed that: "granting the relief requested by [Appellant] would improperly reward [Appellant] for sitting on its rights during the pendency of the Debtor's bankruptcy case, and further provide [Appellant] with an unwarranted dispositive litigation advantage in its Foreclosure Action by preventing the Debtor from defending herself." ECF No. 37 at pp. 5–6. Finally, the Bankruptcy Court indicated in dicta that "even in a case where the debtor indicates an intent to surrender the property in its petition and then fails to

do so, the remedy would be stay relief and not a bar by injunction to defending a foreclosure action which would be unconstitutional, inequitable, and unjust." ECF No. 37 at 9.

On August 27, 2015, Appellant moved for rehearing of the Order, arguing that the Bankruptcy Court committed reversible error by making findings of fact in the Order that are unsupported by precedent or the record. ECF No. 39. Appellant makes largely the same allegations in its Appellant Brief. However, on September 11, 2015, the Bankruptcy Court denied the motion for a rehearing, observing that the so called "findings" are not findings at all, and holding that "*amending the Court's Order to omit each such 'finding' from the opinion would not change the Court's conclusion [that the undisputed facts do not warrant reopening the bankruptcy case at this late date]*." ECF No. 41 (emphasis added). The instant appeal followed. ECF No. 43.

## <u>SUMMARY OF THE ARGUMENT</u>[5]

When deciding whether to reopen a bankruptcy case, the Bankruptcy Court enjoys broad discretion. Bankruptcy courts consider the benefit to creditors, prejudice to the affected party, the availability of relief in another forum and other

---

[5] Appellee objects to each and every argument raised by Appellant in its Initial Brief, and Appellee's decision not to address certain cases or arguments raised in Appellant's Initial Brief as a result of page limitations should not be considered, and is not a waiver of arguments in opposition to Appellant, or in any way an admission that Appellant's arguments are conceded. Appellee reserves the right to further address additional arguments raised in any Reply brief filed by Appellant.

equitable considerations—such as laches—as appropriate on a case-by-case basis.

The Bankruptcy Court did not abuse its discretion by refusing to reopen the Bankruptcy Case. Appellant failed to preserve its rights during the pendency of the Bankruptcy Case, and Appellee has now been severely prejudiced by having to defend the Foreclosure Action while at the same time opposing the Appellant's efforts to reopen the Bankruptcy Case and now the instant appeal. Moreover, an adequate alternative forum *chosen by Appellant* already exists for the assertion of Appellant's rights under the mortgage and the Appellant's view of the legal effect of the failure of the parties to execute a reaffirmation agreement. Therefore, the Bankruptcy Court properly refused to reopen the Bankruptcy Case.

If this Court determines the Bankruptcy Court abused its discretion in refusing to reopen the Bankruptcy Case, it would be a violation of Appellee's due process rights to force her to cease defending her Foreclosure Action based on her failure to execute a reaffirmation agreement. Unlike surrender (which is a unilateral decision made by a debtor), reaffirmation agreements by their very nature require the creditor and debtor to reach agreement. Put simply, it takes "two to tango."

Appellant cites to several cases involving a debtor's failure to surrender *after indicating an intent to surrender* on their statement of intention. Such is not the case here, and therefore the majority of cases cited by Appellant in support of its

argument are simply inapposite. Where, as here, a creditor fails to present a reaffirmation agreement to the debtor, and fails to move to compel reaffirmation or surrender during the pendency of the bankruptcy case, such creditor should not benefit from the windfall it would receive from sitting on its rights for too long as Appellant has done here. Moreover, it is improper to analogize the failure of a creditor and a debtor to execute a reaffirmation agreement with the failure of a debtor to surrender property after a stated intent to do so. Taken to its conclusion, doing so would lead to a creditor obtaining title to a property *for which it may not even be entitled* just because it sat on its rights long enough. Put differently, a sophisticated lender, aware of the time requirements of 11 U.S.C. § 521 could withhold a reaffirmation agreement from a debtor, and then watch the debtor, in some cases pro se debtors, blow the deadline for executing a reaffirmation agreement, and then wait for the appropriate moment in a foreclosure action to take advantage of the debtor's ignorance of the reaffirmation process. Reading the Bankruptcy Code as Appellant suggests is contrary to the principal purpose of the Bankruptcy Code, which is to grant a "fresh start" to the "honest but unfortunate debtor"[6] and would erode the very foundation of due process enshrined in the Constitution. Therefore, this Court should affirm the Bankruptcy Court's Order.

---

[6] *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).

## ARGUMENT

**I.  THE BANKRUPTCY COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT DENIED THE REQUEST TO REOPEN THE BANKRUPTCY CASE.**

Under Section 350(b) of the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "The ability to reopen a bankruptcy case is ***not a*** [sic] ***automatic right*** but instead is left to the ***sole discretion of the bankruptcy court*** on a case by case basis looking at the ***particular circumstances and equities of that specific case***." *In re Mohorne*, 404 B.R. 571, 576 (Bankr. S.D. Fla. 2009) (emphasis added).

The moving party bears the burden of establishing cause to reopen a bankruptcy case. *See In re Winburn,* 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996); *In re Mohammed*, 536 B.R. 351, 355 (Bankr. E.D.N.Y. 2015); *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011).

### A. THE FACTORS A BANKRUPTCY COURT CONSIDERS WHEN DECIDING WHETHER TO REOPEN A BANKRUPTCY CASE

This Court must determine whether the bankruptcy court abused its discretion in refusing to reopen the Bankruptcy Case.[7] "When deciding whether to

---

[7] Appellant ignores or evades this issue in its Initial Brief, but it cannot be gainsaid that if the Court's denial of the request to reopen the Bankruptcy Case was not an abuse of discretion, there is no need to even consider the subsequent issue of what the Court should have done once the case was reopened.

9

reopen a closed case, courts should generally consider the benefit to creditors, the benefit to the debtor, the prejudice to the affected party, and other equitable factors." *Id*. Courts also consider the availability of an alternative forum for relief and the length of time between the closing of a case and the motion to reopen. *See Mohorne v. Beal Bank, S.S.B*., 419 B.R. 488, 493 (S.D. Fla. 2009) citing *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542–44 (8th Cir. 2005) ("The availability of relief in an alternative forum is a permissible factor on which to base a decision not to reopen a closed bankruptcy case"); *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991) ("The longer the time between the closing of the estate and the motion to reopen, however, the more compelling the reason for reopening the estate should be.").

These factors clearly indicates that this case should remain closed: First, there is no benefit to creditors other than Appellant, and Appellant does not offer any argument to the contrary. It is self-evident there is no benefit to Appellee from reopening the Bankruptcy Case. To the contrary, Appellee has been severely prejudiced by having to simultaneously defend against the Foreclosure Action and Appellant's attempts before the Bankruptcy Court and now this Court to reopen the Bankruptcy Case. Moreover, Appellee would be dispositively prejudiced by the reopening the Bankruptcy Case to force her to waive her valid defenses in the

Foreclosure Action. As the Bankruptcy Court observed, even if Appellee had stated an intent to surrender the Property (and she did not), it would be unconstitutional, inequitable and unjust to force Appellee to cease defending her foreclosure action.

As for the availability of an alternative forum, the pending Foreclosure Action clearly demonstrates the availability of such an alternative forum, especially since *Appellant chose the forum* over a year after Appellee received her discharge in bankruptcy.

The time elapsed between the Bankruptcy Case and the relief sought by Appellant weighs against reopening the Bankruptcy Case. Appellee received her discharge on May 7, 2012. It was not until more than a year later, on September 23, 2013 that Appellant even filed the Foreclosure Action, and not until June 15, 2015, three years after Appellee received her discharge, that Appellant filed the instant Motion. During the pendency of the Foreclosure Action, Appellant has apparently been stymied by Appellee "relentlessly fighting us." Tr. 6:14–15. Appellant's frustrations with the Foreclosure Action are of its own making, and the Court should look with jaundiced eye at the length of time elapsed between Appellee's discharge and Appellant's Motion seeking to reopen the Bankruptcy Case. Appellant offers no explanation as to why, after 3 years, Appellant suddenly woke up to its perceived right to seek the Bankruptcy Court's assistance by

reopening the bankruptcy case and having the Bankruptcy Court order Appellee to cease defending the Foreclosure Action. However, Appellant did admit that Appellee had been "relentlessly fighting us" which suggests that Appellant has been frustrated in the Foreclosure Action by Appellee's defenses. Appellant now seeks what amounts to a "silver bullet" to end the Foreclosure Action, and that is an improper attempt to have the Bankruptcy Court tip the scales in Appellant's favor. The Bankruptcy Court made clear in its *Order Denying Motion for Rehearing* [ECF No. 41] that it would not "prevent the ventilating, in the sunshine, of conduct that might be a valid defense to foreclosure."

Appellant here seeks similar relief as the court found insufficient to warrant reopening the bankruptcy case in *In re Apex Oil. Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005). There, the debtor sought to have class action claims against it dismissed in the District Court by reopening its bankruptcy case. Here, Appellant seeks the functional equivalent—an injunction prohibiting Appellee from defending her Foreclosure Action.

In this case, where the Bankruptcy Court has already determined that there is no compelling reason to reopen the Bankruptcy Case, and Appellant has failed to meet its burden to show otherwise, this Court should defer to the Bankruptcy Court's proper exercise of its discretion and affirm.

## B. THE DOCTRINE OF LACHES BARS APPELLANT FROM REOPENING THE BANRUPTCY CASE.

The doctrine of laches, as the bankruptcy court observed (*see* Order at p.4) provides a basis on which to deny a motion to reopen. *In re Arana*, 456 B.R. at 174. Laches bars relief when a party unreasonably delays taking action and the affected party is prejudiced as a result of the delay. *Id*.

Laches has recently been applied to bar a creditor from reopening a bankruptcy case in this district. In *In re Kourogenis*, 539 B.R. 625 (Bankr. S.D. Fla. 2015), the debtor stated her intent to surrender property, but post-discharge the debtor continued to contest a foreclosure action. *Id*. at 2. In refusing to reopen the bankruptcy case to compel surrender, the Court applied the doctrine of laches and observed: "[o]ne of the fundamental principles of equity jurisprudence is that equity aids the vigilant, not those who sleep on their rights." *Id*. at 3. In regards to the debtor's prejudice, the court recognized, "the Debtor's fresh start would be undone [by reopening the case], the Debtor would be dragged back into a bankruptcy that ended more than 5 years ago, and every aspect of the Debtor's intervening financial life would be subject to being scrutinized years after the fact." *Id*. The court held that because the requested relief "could have been sough long ago," and the debtor was prejudiced, "the elements of the defense of laches are met and [the creditor] is barred from the relief it seeks." *Id*. at 4.

13

In *In re Delfino*, 351 B.R. 786 (Bankr. S.D. Fla. 2006), a debtor moved to reopen his bankruptcy case to add a creditor. *Id*. at 788. The *Delfino* court applied the doctrine of laches, and considered whether the movant was diligent in its efforts to reopen the case and whether there had been prejudice. *Id*. at 789. The bankruptcy court denied the motion to reopen because the debtor "should have sought to reopen the case as soon as [the creditor] brought the state court action . . . not after almost two years had passed." *Id*. Furthermore, the creditor was prejudiced as a result of the debtor's, and his attorney's, lack of diligence and ulterior motives in seeking to reopen by having to maintain both cases.[8] *Id*.

In *Apex Oil Co., Inc.*, the Eighth Circuit declined to reopen a bankruptcy case several years after it had been closed. 406 F.3d at 42–43. There, the court considered the availability of relief in the District Court, the presence of other defendants in the class action, the amount of time that had passed since the closing of the bankruptcy case and the lack of impact on the bankruptcy estate. *Id*. at 542. On appeal, the Eighth Circuit approved of the bankruptcy court's use of these factors, and noted, "[t]he appellees' claims are already being adjudicated in state court, and the related dischargeability issue could be ruled upon in that forum in light of Apex's assertion of a dischargeability defense in the state court action. *Id*.

---

[8] In *Delfino*, the court determined that debtor's counsel was motivated to maximize his fees through the state court litigation contrary to his client's best interest.  351 B.R. at 789.

Additionally, the court also stated that no compelling reason to reopen the case existed seven years after it was closed. *Id*. at 543.

Laches supports the bankruptcy court's decision to deny the motion to reopen, and affirmance is appropriate.

## II. CAUSE DOES NOT EXIST TO COMPEL DEBTOR TO CEASE DEFENDING THE FORECLOSURE ACTION AND SURRENDER THE PROPERTY

A ruling in favor of Debtor on the first issue before this Court obviates any need to consider whether Debtor should be compelled to surrender the Property if the Bankruptcy Case is reopened. First things first: Here, because it has not been shown that the bankruptcy court abused its discretion in determining to deny the Motion, there is no need for an analysis of the issue that would have been put forward. *Appellant is out at first.*

However, further analysis of 11 U.S.C. §521, as well as relevant case law, reveals that the Bankruptcy Court properly ruled that even if Appellant had shown cause to reopen the Bankruptcy Case (and it did not), it would not have exercised its power under 11 U.S.C. § 105 to force Appellee to cease defending the Foreclosure Action.

Section 521(a)(2) of the Bankruptcy Code provides:

[I]f an individual debtor's schedule of assets and liabilities includes
debts which are secured by property of the estate—

(A)   within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

(B)   within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; *except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362 (h);*

11 U.S.C. §521(a)(2) (emphasis added).

Even where a debtor states an intent to surrender, that does not provide a secured creditor an avenue to bypass the foreclosure process in state court. *See In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014); *see also In re Kourogenis*, 539 B.R. 625 (Bankr. S.D. Fla. 2015). In *Plummer*, the debtor intended to surrender, and the issue was how surrender was to be completed. *Id*. at 142. The *Plummer* court set out to define "surrender" by distinguishing the term from "foreclosure." *Id*. at 143. "'Surrender' is not the equivalent to 'foreclosure.' '*Section 521 was not designed to provide a mechanism by which creditors may avoid obligations imposed by state law*.'" *Id*. (emphasis added) (quoting *In re Theobald*, 218 B.R. 133, 136 (B.A.P. 10th Cir. 1998)).   The court went on to

16

explain that a debtor's section 521(a)(2)(A) obligation to surrender has been met "when he allows the secured creditor . . . to obtain possession by available legal means without interference." *Id*.

In *Kourogenis*, the court expanded upon *Plummer*'s reasoning and concluded that ***"[w]hatever the meaning of 'surrender' under Section 521, it cannot possibly mean that a party who, for instance, does not own the note and mortgage can nonetheless foreclose on the property, without the Debtor being heard, solely because the Debtor indicated an intent to surrender***." *In re Kourogenis*, 539 B.R. at 629 (emphasis added). The *Kourogenis* court telegraphed the precise issue in this case, which is that it would violate a debtor's due process rights to force a debtor to stop defending a foreclosure action, even if, unlike the Appellee who stated an intent to reaffirm, a debtor stated an intent to surrender. Two potentially drastic consequences could stem from Appellant's desired outcome in this case: (1) secured creditors who do not own the note to the property would be permitted to obtain title to property to which they would never be entitled in a contested foreclosure case, and (2) every debtor in bankruptcy who could not reach a reaffirmation agreement with their lender or afford to redeem the debt within the statutory time period would lose their home. It would render the choice between reaffirmation and surrender a nullity, because the practical effect would

be: "File bankruptcy, lose your home." Neither result comports with the Constitution or the Bankruptcy Code.

In this case, as the Bankruptcy Court stated, "[Appellant] can and must address its standing issues in the alternate forum *it chose* when it initiated the Foreclosure Action."   Order at 8–9 (emphasis added).   Appellant chose, in September 2013, to file the Foreclosure Action instead of immediately seeking relief from the Bankruptcy Court during the pendency of the Appellee's bankruptcy case, and it should not be rewarded with any remedy now, let alone one that violates Appellee's constitutional right to due process. It should not be lost upon this Court that if Appellee's defenses are truly as meritless as Appellant suggests, it will ultimately prevail in the Foreclosure Action. Thus, at worst, it has been inconvenienced with the passage of time. But this inconvenience pales in comparison to the severe prejudice to debtors that would ensue were lenders able to lie in wait for years, just as Appellant has done, only to run back into their borrowers' bankruptcy cases years later in an attempt to resurrect long-interred proceedings.

Courts have held that the proper remedy for a debtor's failure to follow through on its section 521(a)(2) obligations is relief from the automatic stay pursuant to section 362 (h). *See In re Trussel*, *Memorandum Opinion Denying 21 Asset Management Holding, LLC's Motion to Compel*, Case No. 1:12-bk-10001-

18

KSJ (Bankr. N.D. Fla. Mar. 5, 2015) [ECF No. 180 at pp. 6-7].[9] Section 362 (h)(1)(B) states, "if the debtor fails within the applicable time set by section 521(a)(2) to take timely the action specified in such statement . . . unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms." § 362 (h)(1)(B). As the *Trussel* court observed: "relief from the automatic stay is the preferred remedy absent compelling circumstances." *In re Trussel*, [ECF No. 180 at p. 7].

In *Trussel*, the debtor filed his bankruptcy petition after the creditor already filed a foreclosure action. *Id*. at 2. The debtor stated his intent to reaffirm a mortgage secured by his home. *Id*. at 2. The parties never reached a reaffirmation agreement, and the case was closed. *Id*. After the case was closed, the creditor recommenced its foreclosure action in state court. *Id*. The debtor raised affirmative defenses in the foreclosure action, and in turn, the creditor sought to have the bankruptcy court order the debtor to abandon his affirmative defenses and surrender the property. *Id*. Despite the debtor's concession that failure to reaffirm required surrender, "[t]he Court . . . does not accept the legal conclusion that a debtor who cannot reach a reaffirmation agreement with a creditor automatically must surrender the property." *Id*.

---

[9] The bracketed ECF No. citations contained within this paragraph refer to the docket entry in *In re Trussel*.

The *Trussel* court reasoned, "[i]n cases like this one, where Trussel stated an intent to reaffirm the debt but ultimately the Debtor and Creditor could not come to an agreement, ***the Court would look for extraordinary circumstances before issuing an injunction ordering the Debtor to surrender the Property***." *Id*. at 6 (emphasis added). The court added, "the Court concludes the Creditor primarily is seeking an injunction to preclude or short-circuit Trussel's right to raise legitimate defenses in the pending state court foreclosure. ***Trying to avoid responding to legitimate defenses does not constitute sufficient compelling cause to obtain the extraordinary remedy of an injunction***." *Id*. (emphasis added).

Appellant is seeking the exact same relief in this case that the creditor sought in *Trussel*. Indeed, the defenses raised by the debtor in the foreclosure action in *Trussel* included standing, just as it is an issue in the pending Foreclosure Action. Also, in *Trussel*, "[t]he precise reason for the failed reaffirmation is unclear. . . . neither Creditor nor Debtor introduced evidence showing what steps Trussel took or did not take towards reaffirming the debt." *Id*. at 3–4. Likewise, the record in this case is devoid of any evidence as to why a reaffirmation agreement was not reached. Ultimately, it is irrelevant why a reaffirmation agreement was never executed. What is relevant is that Appellant never did anything during the pendency of Appellee's Bankruptcy Case to ensure a reaffirmation agreement was

executed, or the property surrendered within the prescribed timeframe set forth in 11 U.S.C. § 521.

Appellant devotes significant effort attempting to distinguish *Trussel* from this case. However, these efforts are merely an attempt to once again improperly present its arguments in the Foreclosure Action in this matter. Despite Appellant's contention that *Trussel* relies on the merits of the concurrent state court action in that case, the written order simply precludes such a reading. The *Trussel* court did not analyze the debtor's standing defense in the foreclosure case, and it would have been improper for it to do so. Rather, the court stated that the debtor had a ***right*** to raise defenses:

> 'The mere fact that ordering surrender might be more efficient for [Creditor] from a process standpoint . . . is not enough to warrant a more serious remedy.' Rather, the Court concludes the Creditor primarily is seeking an injunction to preclude or to short-circuit Trussel's right to raise legitimate defenses in the pending state court foreclosure. Trying to avoid responding to legitimate defenses does not constitute sufficient compelling cause to obtain the extraordinary remedy of an injunction.

*Id.* at 7 (alteration in original) (quoting *In re Donnell*, 234 B.R. 567, 575 (Bankr. D.N.H. 1999)). Appellant contends that there is no legitimate issue of standing in the Foreclosure Action, yet it seeks to fight that battle in this Court as opposed to the state court where the Foreclosure Action is actually pending. If Debtor's standing argument is as illegitimate as Appellant contends in these proceedings,

then it should have no problem on summary judgment dispensing with the defense in the Foreclosure Action.

Typically, courts grant relief from the automatic stay to creditors where a debtor has not reaffirmed within the statutory time period. Alternatively, a court could dismiss a debtor's bankruptcy case for failure to execute a reaffirmation agreement, as was done in *In re Harris*, 226 B.R. 924 (Bankr. S.D.Fla. 1998). Where, as here, there is no longer a stay in place and Appellant has sought relief in the Foreclosure Action, there is no need for this Court to take action, let alone the extreme action requested by Appellant of compelling surrender.

Appellant further relies on *In re Taylor*, 3 F.3d 1512 (11th Cir. 1993) for the proposition that a debtor cannot remain in possession of collateral unless he reaffirms or redeems the debt. However, a closer reading of *Taylor* reveals that while the court did require reaffirmation or redemption to retain the collateral, the Eleventh Circuit did not compel surrender as a result of failure to reaffirm. *Id*. at 1517. Instead, the court affirmed the Bankruptcy Court's decision to compel reaffirmation or redemption, an action Appellant insists is now improper. *Id*.

Importantly, the *Taylor* court provides insight as to the very nature of a reaffirmation agreement. "'[*R*]*eaffirmation is supposed to involve a fully voluntary negotiation on both sides*.'"  *Id*. at 1515 (alteration in original) (emphasis added) (quoting *In re Edwards*, 901 F.2d 1383, 1386 (7th Cir. 1990)).

Appellant argues that the burden of reaching a reaffirmation agreement falls squarely on Debtor's shoulders. This ignores the plain meaning of "agreement," which necessarily requires two parties. Surely, where an agreement is required but not reached, both parties are partially responsible. Yet, Appellant urges this Court to grant it certain victory in the Foreclosure Action when Appellant also failed in its share of the responsibility to reach a reaffirmation agreement under section 521(a)(2). That result does not comport with the equitable nature of bankruptcy proceedings, especially considering it would literally put Appellee out of house and home in this case.

Appellant also relies on other distinguishable cases. *See, e.g.*, *In re Bartlett*, Case No. 8:10-bk-23758-MGW, *Order Granting in Part and Denying in Part Creditor's Motion to Reopen Bankruptcy Case and Compel Surrender of Property* (Bankr. M.D. Fla. Jul. 28, 2015); *In re Picciano*, Case No. 11-36787-PGH, *Order Granting Motion to Reopen Bankruptcy Case and Compel Surrender of Property* (Bankr. S.D. Fla. May 22, 2015).[10]  In *Bartlett*, the court's order does not provide much insight into the reasoning behind reopening the case and compelling surrender. However, the transcript of the hearing on the motion to reopen and compel surrender is more illuminating. At the hearing, the court noted, "I'm not sure I need to prohibit the Debtor from reaffirming. There's no way a Debtor can

---

[10] Copies of the orders from *Bartlett* and *Picciano* can be found at ECF No. 39, Exhibit B.

reaffirm a debt that's been accelerated." *In re Bartlett*, Transcript of Hearing July 9, 2015, 5:7–9.[11]   Therefore, "in this case I can find that the Debtor has constructively surrendered."   *Id*. at 5:22–23.   This concept of "constructive surrender" has no support or justification in the Bankruptcy Code or any binding case law. To continue applying this fictional doctrine of constructive surrender in this case or any future case would create dangerous precedent allowing secured creditors to sit on their rights and refuse to enter reaffirmation agreements with debtors as a method of succeeding in state court foreclosure proceedings. Furthermore, surrender under section 521 is intended to be a voluntary action that should not be imposed upon a debtor especially where she has indicated an intent to retain the property and the secured creditor can seek relief via foreclosure. Adopting the theory of constructive surrender would result in every debtor who files bankruptcy and cannot reach a reaffirmation agreement automatically losing his or her home. This outcome flouts the equitable principles underlying the Bankruptcy Code.

*In re Picciano* is also distinguishable and also not binding on this Court. There, at a hearing on the creditor's motion to reopen and compel surrender, the debtors represented to the court that they were going to change their initial election of reaffirmation and instead surrender the property. *In re Picciano*, at ¶ B. Here,

---

[11] A copy of the *Bartlett* hearing transcript can be found at ECF No. 39, Exhibit C.

Appellee has no intention of surrendering the Property; therefore, the consequences of indicating an intent to surrender and failing to do so are inapplicable here. The same is true of *In re Failla*, 529 B.R. 786, 788 (Bankr. S.D. Fla. 2014), where the court compelled the debtors to surrender the property at issue because they indicated an intent to surrender. The issue in *Failla* was not whether surrender was appropriate; rather, the issue was whether to surrender the property to the secured creditor or the trustee, an irrelevant consideration in this case. Any and all cases relied upon by Appellant in which a debtor indicated an intent to surrender are inapposite and inapplicable to the facts of the instant case.

Appellant cites to *In re Jones*, 261 B.R. 479 (Bankr. N.D. Ala. 2001) in support of the contention that it could not have sought to compel reaffirmation. Appellant misses the point: creditors must bring a failure to execute a reaffirmation agreement to the court during the pendency of a bankruptcy case within time for the bankruptcy court to act. Doing so would provide a bankruptcy court with the opportunity to compel a debtor to either follow through with its stated intent and sign a reaffirmation agreement, or surrender the property, because it cannot retain property without a reaffirmation agreement (or redemption of the debt which all will likely concede is a practical nullity). There is no debate that a debtor must choose between redemption, reaffirmation and surrender. Moreover, in cases decided after *Jones*, courts have allowed debtors an opportunity to reaffirm the

debt even after the time prescribed in 11 U.S.C. § 521 has expired. *See e.g., In re Montalvo*, Case No 8:13-bk-0201-MGW, *Order on Creditor's Motion to Compel* (Bankr. M.D. Fla., Mar. 12, 2015). In *Montalvo*, Judge Williamson, the same judge who presided over *In re Bartlett*, allowed the debtor additional time to reaffirm. *Id.* at ¶ 3; *see also In re Linderman*, 435 B.R. 715 (Bankr. M.D. Fla. 2009) (providing the debtor thirty days to make an election as to reaffirmation, redemption or surrender and follow through with that intention).

Appellant's strict interpretation of the right of reaffirmation cannot hold water. A bright-line rule disallowing a court of equity to provide additional time to reach a reaffirmation agreement, provide relief from the stay, or other just relief after the expiration of thirty days would unjustly reward a creditor who has not acted in good faith to reach agreement on the terms of a reaffirmation agreement. That is precisely the situation at bar. Appellant slept on its rights since the commencement of the bankruptcy case, and now seeks a windfall for its own lack of diligence. Accordingly, and as stated in the Order, "a bar by injunction to defending the foreclosure action [ ] would be unconstitutional, inequitable and unjust." ECF No. 37 at 9.

## CONCLUSION

The bankruptcy court properly exercised its discretion in determining that cause had not been shown to reopen the bankruptcy case. The bankruptcy court

reviewed the relevant factors for making such a determination, and Appellant simply ignores this issue altogether. Nonetheless, there is simply no reason for this Court to go beyond the dispositive issue of the bankruptcy court's proper exercise of its discretion. Moreover, the bankruptcy court properly exercised its discretion in applying laches to bar Appellant's requested relief. Appellant simply ignored its rights and obligations under section 521(a)(2)(B) and now requests this Court to grant it the extraordinary remedy of an injunction precluding Debtor from defending the Foreclosure Action. Moreover, an alternative forum exists for the Appellant to assert its alleged rights—state court. Appellant chose to initiate the Foreclosure Action, and its frustration with, and inability to resolve, that litigation in that (appropriate) forum should not serve as a basis to reopen the long-closed doors of the Bankruptcy Court.

For the reasons set forth above, and upon the authorities cited herein, Appellee respectfully prays that this Court affirm the Bankruptcy Court's Order.

Dated: January 22, 2016.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 22, 2016, I electronically filed the

foregoing document with the Clerk using CM/ECF.

James C. Moon, Esq.
Florida Bar No.: 938211
jmoon@melandrussin.com
Joseph Wasserkrug, Esq.
Florida Bar No.: 112274
joseph@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
200 South Biscayne Blvd., Ste. 3200
Miami, FL 33131
Tel: (305) 358-6363
Fax: (305) 358-1221

*Counsel for Appellee*
*Genny Marino Rodriguez*
